UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| VICTOR DIAZ #203420, | |
| Plaintiff, | Case No. 2:05-cv-239 |
| v. | HON. ROBERT HOLMES BELL |
| LYLE RUTTER, et al., | |
| Defendants. | **OPINION** |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint, in part, for failure to state a claim. In addition, the court will dismiss the remainder of Plaintiff's complaint for failure to exhaust administrative remedies.

**Discussion**

I.  Factual Allegations

Plaintiff Victor Diaz, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Inspector Lyle Rutter, Hearings Officer Linda Maki, Hearings Investigator B. Hopson, Sergeant Unknown Brown, P. Carberry, and P. Caruso. Plaintiff alleges that he worked in the Braille program from 1990 until 1998, when he was transferred to the G. Robert Cotton Correctional Facility (JCF). In 1998, Michigan revised its drug laws and Plaintiff became eligible for parole.

In 2000, Plaintiff was transferred to the Chippewa Correctional Facility (URF) in relation to an investigation into unsubstantiated rumors about drugs. No evidence was produced to justify any disciplinary action. Plaintiff was transferred out of URF later in 2000. However, on September 7, 2001, Plaintiff was transferred back to URF due to an ongoing investigation. No disciplinary action resulted. Plaintiff attempted to start an allowable organization called L.A.S.S.O. while at URF, along with prisoners Gray Garcia and Rene Rodriguez. Meetings were planned to occur once per month to discuss issues related to Latino prisoners such as cultural and historical awareness, education, recidivism, and conflict resolution.

Plaintiff states that prisoners designated as active STG (Security Threat Group) members are excluded from participation pursuant to policy. In 2004, Plaintiff submitted a kite to the recreation department requesting permission to start the L.A.S.S.O. chapter. Defendant Brown told Plaintiff that he would not be getting approval because L.A.S.S.O. was nothing but a gang. Plaintiff pointed out that L.A.S.S.O. would be under the direct supervision of staff. Plaintiff then suggested forming a chapter of H.A.S.T.A. (Hispanic Americans Striving Toward Advancement).

Defendant Brown stated that this was also a cover for a gang, and that if Plaintiff tried to organize such a group he would be "hooked up." Plaintiff spoke to other Latino prisoners, some of whom were affiliated with gangs that had few to zero members at URF, and tried to get them to leave the gangs and do something positive.

Defendant Brown approached Plaintiff on many occasions between December 2004 and January 31, 2005. During these encounters, Defendant Brown stated that he was watching Plaintiff and referred to H.A.S.T.A. as a gang. Defendant Brown told Plaintiff that he would get him "off this yard no matter what it takes." Defendant Brown further stated that "they don't want no more prisoner organizations, that's why Melanics are gone." On January 31, 2005, prisoner Harbin assaulted prisoner Aguilar. Defendant Brown accused Plaintiff of somehow instigating the problem between prisoners Harbin and Aguilar. Plaintiff was transferred to LMF on January 31, 2005, as a result of this accusation. The Security Classification Committee (SCC) subsequently raised Plaintiff's risk level from III to V, and placed Plaintiff in a transition unit which was significantly more restrictive than level V general population.

Defendant Rutter approached Plaintiff in February of 2005 and asked him about his activities at URF. Defendant Rutter told Plaintiff that if he provided detailed information about the assaults, he would have Plaintiff back to a level II or III "in no time." Additionally, Defendant Rutter warned Plaintiff that if he refused to provide such information, he would be a level V prisoner indefinitely. Plaintiff claims that Defendant Rutter approached him for such information several times between February and April of 2005. On April 6, 2005, Defendant Rutter issued a Notice of Intent (NOI) on Plaintiff, which ordered him to speak only English on the phone. Plaintiff states that this order was not given to any other Spanish speaking prisoners.

On April 11, 2005, Defendant Carberry upheld the NOI following a hearing, despite failing to articulate any penological justification his finding. Defendant Carberry merely noted that it appeared that Plaintiff was attempting to hide his conversation. Defendant Carberry told Plaintiff that it was not "up to" him and that "they" did not want Plaintiff speaking Spanish. Plaintiff complains that there is no penological justification for the prohibition as all phone calls are recorded and use of Spanish on the phone is not prohibited by policy.

Plaintiff claims that he held a prison job from March 11, 2005, until April 30, 2005. On April 30, 2005, Plaintiff was accused of creating a security concern by walking in the direction of the perimeter fence. Defendant Rutter termed Plaintiff's action as an attempt to escape. On April 30, 2005, Defendant Rutter wrote a second NOI on Plaintiff which resulted in him being reclassified to administrative segregation. Defendant Rutter recited Defendant Brown's unsubstantiated allegations and stated that over time Plaintiff had gained control over the Latino gangs at URF. Defendant Rutter further stated that Plaintiff used his control to sanction assaults on other prisoners, extort other prisoners for protection, and to obtain weapons and drugs. Defendant Rutter claimed that after Plaintiff arrived at LMF, he began building ties with several Latino prisoners and formed a group known as the "Latino Community," which made decisions for the entire Latino population. Plaintiff claims that the reports written by Defendants Brown and Rutter were both misleading and based entirely on hearsay from prisoners not proven to be credible. In addition, Plaintiff states that Defendants Rutter and Brown omitted evidence from prisoners who gave information not helpful to their claims.

Plaintiff alleges that on May 3, 2005, Defendant Hopson wrote that Plaintiff had requested "no witnesses," which was untrue. Defendant Hopson failed to interview Defendant

Rutter or Defendant Brown, nor did he interview any of the confidential informants. Prior to Plaintiff's hearing, Defendant Hopson told him that the outcome was "pretty much academic" and that Plaintiff was "gonna be in the hole awhile." Defendant Maki was assigned as the hearing officer on the NOI. During an adjournment of the hearing, Defendant Rutter was overheard telling Defendant Maki that Plaintiff was a "real problem." Defendant Maki responded by stating, "You've got nothing here, you've gotta give me something I can work with." At the conclusion of the hearing, Defendant Maki found that the URF information was credible and that Plaintiff's control of the Latino gangs at URF resulted in a serious assault against a close associate. Defendant Maki refused to contact prisoner Rodriguez regarding his letter, which was used as evidence against Plaintiff. Defendant Maki failed to state on the record which confidential informants she found credible, or what evidence was relied on. Defendant Maki denied Plaintiff's request for prisoner Vega and prison staff as witnesses. On May 13, 2005, the SCC classified Plaintiff to administrative segregation based on Defendant Maki's findings.

Plaintiff claims that the actions of Defendants Rutter and Brown were motivated by Plaintiff's refusal and inability to provide information on gang activity and assaults, as well as Plaintiff's attempt to establish a legal organization for the benefit of Latinos. Plaintiff contends that he will be adversely affected if the Parole Board considers the unfounded charges against him as well as his placement in administrative segregation. Plaintiff states that he has not lost any good time as a result of Defendants' conduct and has no remedy in habeas corpus. Plaintiff seeks both damages and injunctive relief.

### II. Lack of exhaustion of available administrative remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 122 S. Ct. 983 (2002); *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 122 S. Ct. at 984; *Booth*, 532 U.S. at 741, 121 S. Ct. at 1824. A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000). A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claims of improper STG designation, classification to administrative segregation and retaliation are the type of claims that may be grieved. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or

unsatisfactory conditions of confinement") (effective Nov. 1, 2000); ¶ J (may grieve acts of reprisal for using the grievance process or for assisting others in filing grievances) (effective Oct. 11, 1999 and Nov. 1, 2000).

The burden to allege and show exhaustion belongs to Plaintiff.  *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104.  This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642.  Plaintiff attaches to his complaint copies of grievances he filed on Defendants Rutter, Maki, Hopson, Brown, and Carberry and copies of step II and III appeals.  However, it does not appear that Plaintiff filed a grievance on Defendant Caruso.  An allegation that remedies have been exhausted is not enough, as a plaintiff must provide the decisions reflecting the administrative disposition of his claims or other evidence showing that he has exhausted his remedies. *Williams v. McGinnis*, No. 98-1042, 1999 WL 183345, at *1 (6th Cir. March 16, 1999). The Sixth Circuit has found that the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits."  *See Knuckles El*, 215 F.3d at 642.

Because Plaintiff has failed to exhaust his claims against one of the named Defendants, the Court will dismiss his action pursuant to the "total exhaustion" rule. Under the total exhaustion rule, the presence of an unexhausted claim results in the dismissal of the entire action. *Jones Bey v. Johnson*, *et al.*, 407 F.3d 801 (6th Cir. 2005).  Dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies.  *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).  Dismissal for failing to exhaust available administrative remedies does

not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997). Accordingly, the Court will dismiss Plaintiff's action without prejudice.

However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998). Because some of the claims asserted in Plaintiff's complaint fail to state a claim, the court will dismiss those claims with prejudice without first requiring Plaintiff to exhaust any available administrative remedies.

### III.    Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

Plaintiff claims that he has been given a NOI, has had his security classification increased, and has been placed in administrative segregation in violation of his procedural due process rights. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although plaintiff states that his placement in segregation has been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his segregation is that its duration has been for more than one year. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Plaintiff has failed to make any allegations which that his segregation is "atypical and significant." Consequently, the court concludes that no liberty interest is implicated by his placement.

Plaintiff's claim that his treatment decreases the likelihood that he will be granted parole also fails to raise a claim of constitutional magnitude. Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v.*

*Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights. *See Sweeton*, 27 F.3d at 1164-65.

In addition, the Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205(1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations in this case fail to meet this formidable standard and thus, he fails to state a claim that his substantive due process rights were violated.

Plaintiff fails to make any specific allegations against Defendant Caruso in the body of his complaint. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City*

*Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Caruso was personally involved in the activity which forms the basis of his claim. Defendant Caruso cannot be held liable for the denial of administrative grievances or the failure to act under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Caruso are properly dismissed for lack of personal involvement.

The court notes that Plaintiff's equal protection, retaliation, conspiracy and state law claims do not clearly lack merit. However, as noted above, these claims may be dismissed without prejudice for failure to comply with the exhaustion requirement set forth in 42 U.S.C. § 1997e(a).

Plaintiff has filed a motion for a temporary restraining order and preliminary injunction (docket #3). In light of the dismissal of Plaintiff's complaint, this motion is properly denied as moot.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's substantive and procedural due process claims, as well all of his claims against Defendant Caruso, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b);

42 U.S.C. § 1997e(c). In addition, the Court will dismiss the remainder of Plaintiff's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.


Dated:     November 29, 2005            /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT JUDGE