UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VICTOR DIAZ,

    Plaintiff,

                                                  Case No. 2:05-cv-239

v.                                           HON. ROBERT HOLMES BELL

LYLE RUTTER, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Victor Diaz, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Inspector Lyle Rutter, Hearings Officer Linda Maki, Hearings Investigator B. Hopson, Sergeant Unknown Brown, and P. Carberry. Plaintiff alleges that he worked in the Braille program from 1990 until 1998, when he was transferred to the G. Robert Cotton Correctional Facility (JCF). In 1998, Michigan revised its drug laws and Plaintiff became eligible for parole.

        In 2000, Plaintiff was transferred to the Chippewa Correctional Facility (URF) in relation to an investigation into unsubstantiated rumors about drugs. No evidence was produced to justify any disciplinary action. Plaintiff was transferred out of URF later in 2000. However, on September 7, 2001, Plaintiff was transferred back to URF due to an ongoing investigation. No disciplinary action resulted. Plaintiff attempted to start an allowable organization called L.A.S.S.O. while at URF, along with prisoners Gray Garcia and Rene Rodriguez. Meetings were planned to occur once per month to discuss issues related to Latino prisoners such as cultural and historical awareness, education, recidivism, and conflict resolution.

Plaintiff states that prisoners designated as active STG (Security Threat Group) members are excluded from participation pursuant to policy. In 2004, Plaintiff submitted a kite to the recreation department requesting permission to start the L.A.S.S.O. chapter. Defendant Brown told Plaintiff that he would not be getting approval because L.A.S.S.O. was nothing but a gang. Plaintiff pointed out that L.A.S.S.O. would be under the direct supervision of staff. Plaintiff then suggested forming a chapter of H.A.S.T.A. (Hispanic Americans Striving Toward Advancement). Defendant Brown stated that this was also a cover for a gang, and that if Plaintiff tried to organize such a group he would be "hooked up."

Defendant Brown approached Plaintiff on many occasions between December 2004 and January 31, 2005. During these encounters, Defendant Brown stated that he was watching Plaintiff and referred to H.A.S.T.A. as a gang. Defendant Brown told Plaintiff that he would get him "off this yard no matter what it takes." Defendant Brown further stated that "they don't want no more prisoner organizations, that's why Melanics are gone." On January 31, 2005, prisoner Harbin assaulted prisoner Aguilar. Defendant Brown accused Plaintiff of somehow instigating the problem between prisoners Harbin and Aguilar. Plaintiff was transferred to LMF on January 31, 2005, as a result of this accusation. The Security Classification Committee (SCC) subsequently raised Plaintiff's risk level from III to V, and placed Plaintiff in a transition unit which was significantly more restrictive than level V general population.

Defendant Rutter approached Plaintiff in February of 2005 and asked him about his activities at URF. Defendant Rutter told Plaintiff that if he provided detailed information about the assaults, he would have Plaintiff back to a level II or III "in no time." Additionally, Defendant Rutter

warned Plaintiff that if he refused to provide such information, he would be a level V prisoner indefinitely. Plaintiff claims that Defendant Rutter approached him for such information several times between February and April of 2005. On April 6, 2005, Defendant Rutter issued a Notice of Intent (NOI) on Plaintiff, which ordered him to speak only English on the telephone. Plaintiff states that this order was not given to any other Spanish speaking prisoners.

On April 11, 2005, Defendant Carberry upheld the NOI following a hearing, despite failing to articulate any penological justification for his finding. Defendant Carberry merely noted that it appeared that Plaintiff was attempting to hide his conversation. Defendant Carberry told Plaintiff that it was not "up to" him and that "they" did not want Plaintiff speaking Spanish. Plaintiff complains that there is no penological justification for the prohibition as all telephone calls are recorded

and use of Spanish on the telephone is not prohibited by policy. Plaintiff claims that he held a prison job from March 11, 2005, until April 30, 2005. On April 30, 2005, Plaintiff was accused of creating a security concern by walking in the direction of the perimeter fence. Defendant Rutter termed Plaintiff's action as an attempt to escape. On April 30, 2005, Defendant Rutter wrote a second NOI on Plaintiff which resulted in him being reclassified to administrative segregation. Defendant Rutter recited Defendant Brown's unsubstantiated allegations and stated that over time Plaintiff had gained control over the Latino gangs at URF.

Defendant Rutter further stated that Plaintiff used his control to sanction assaults on other prisoners, extort other prisoners for protection, and to obtain weapons and drugs. Defendant Rutter claimed that after Plaintiff arrived at LMF, he began building ties with several Latino prisoners and formed a group known as the "Latino Community," which made decisions for the entire Latino population. Plaintiff claims that the reports written by Defendants Brown and Rutter

- 3 -

were both misleading and based entirely on hearsay from prisoners not proven to be credible. In addition, Plaintiff states that Defendants Rutter and Brown omitted evidence from prisoners who gave information not helpful to their claims.

Plaintiff alleges that on May 3, 2005, Defendant Hopson wrote that Plaintiff had requested "no witnesses," which was untrue. Defendant Hopson failed to interview Defendant Rutter, Defendant Brown, or any of the confidential informants. Prior to Plaintiff's hearing, Defendant Hopson told him that the outcome was "pretty much academic" and that Plaintiff was "gonna be in the hole awhile." Defendant Maki was assigned as the hearing officer on the NOI. During an adjournment of the hearing, Defendant Rutter was overheard telling Defendant Maki that Plaintiff was a "real problem." Defendant Maki responded by stating, "You've got nothing here, you've gotta give me something I can work with." At the conclusion of the hearing, Defendant Maki found that the URF information was credible and that Plaintiff's control of the Latino gangs at URF resulted in a serious assault. Defendant Maki refused to contact prisoner Rodriguez regarding his letter, which was used as evidence against Plaintiff. Defendant Maki failed to state on the record which confidential informants she found credible, or what evidence was relied on. Defendant Maki denied Plaintiff's request for prisoner Vega and prison staff as witnesses. On May 13, 2005, the SCC classified Plaintiff to administrative segregation based on Defendant Maki's findings. Plaintiff claims that the actions of Defendants Rutter and Brown were motivated by Plaintiff's refusal and inability to provide information on gang activity and assaults, as well as Plaintiff's attempt to establish a legal organization for the benefit of Latinos. Plaintiff contends that he will be adversely affected if the Parole Board considers the unfounded charges against him as well as his placement in administrative segregation. Plaintiff states that he has not lost any good time as a result of

Defendants' conduct and has no remedy in habeas corpus. Plaintiff seeks both damages and injunctive relief.

Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to demonstrate exhaustion of administrative remedies. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the Plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

In their motion to dismiss, Defendants contend that Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a),

- 5 -

a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See also Booth v. Churner*, 121 S. Ct. 1819, 1823-24 (2001). A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Booth*, 121 S. Ct. at 1823; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 121 S. Ct. 634 (2000); *Hartsfield v. Vidor*, 199 F.3d 305, 308 (6th Cir. 1999); *Wyatt*, 193 F.3d at 878-79; *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

On November 30, 2005, after initial review of the complaint, the court entered an opinion and judgment dismissing the case for failing to exhaust grievance remedies. On January 3, 2006, the court granted in part Plaintiff's motion to alter and amend judgment. Plaintiff indicated that he never intended to name P. Caruso as a Defendant in this action and since she was the only unexhausted defendant, he did exhaust his claims against the named Defendants. Defendants' motion now asserts that Plaintiff did not exhaust his grievance remedies because he did not indicate that Defendants Maki, Rutter and Hopson conspired which each other. Defendants suggest that if Plaintiff would have asserted his conspiracy theory in his grievance, his grievance would have been taken more seriously.

Defendants assert that Plaintiff's complaint should be dismissed for lack of total exhaustion. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). However, there is no requirement that a prisoner must exhaust specific legal theories. It is enough that Plaintiff presents

factual allegations that could support a legal theory against the Defendants in a Step I grievance. Moreover, it appears that Plaintiff did allege that defendants engaged in a conspiracy in his grievance filings.

Plaintiff has filed a motion for sanctions against Defendants for filing this motion to dismiss. However, while Defendants' motion failed to present a strong argument, it was not completely baseless. In the opinion of the undersigned, sanctions are not warranted.

Accordingly, it is recommended that Defendants' motion to dismiss (docket # 30) be denied and Plaintiff's motion for sanctions (docket #39) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

     /s/ Timothy P. Greeley
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE

Dated:   October 25, 2006