UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VICTOR DIAZ,

        Plaintiff,

v.                                      Case No. 2:05-cv-239
                                      HON. ROBERT HOLMES BELL
 LYLE RUTTER, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate at Alger Maximum correctional Facility (LMF), filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Bruce Hobson, Linda Maki, Lyle Rutter, Mike Brown, Peggy Carberry, and P. Caruso.  Defendant Caruso was dismissed from the action (Docket #11).  The remaining Defendants are employees of the Michigan Department of Corrections (MDOC).  Defendants are sued in their individual capacities.

Plaintiff alleges that he worked in the Braille program from 1990 until 1998, when he was transferred to the G. Robert Cotton Correctional Facility (JCF).  In 1998, Michigan revised its drug laws and Plaintiff became eligible for parole.  In 2000, Plaintiff was transferred to the Chippewa Correctional Facility (URF) in relation to an investigation into unsubstantiated rumors about drugs.  No evidence was produced to justify any disciplinary action.  Plaintiff was transferred out of URF later in 2000.  However, on September 7, 2001, Plaintiff was transferred back to URF due to an ongoing investigation.  No disciplinary action resulted.  While at URF, Plaintiff attempted to start an organization called L.A.S.S.O. along with prisoners Gray Garcia and Rene Rodriguez.

Meetings were planned to occur once per month to discuss issues related to Latino prisoners such as cultural and historical awareness, education, recidivism, and conflict resolution.

Plaintiff states that prisoners designated as active STG (Security Threat Group) members are excluded from participation pursuant to policy. In 2004, Plaintiff submitted a kite to the recreation department requesting permission to start the L.A.S.S.O. chapter. Defendant Brown told Plaintiff that he would not be getting approval because L.A.S.S.O. was a gang. Plaintiff pointed out that L.A.S.S.O. would be under the direct supervision of staff. Plaintiff then suggested forming a chapter of H.A.S.T.A. (Hispanic Americans Striving Toward Advancement). Defendant Brown stated that this was also a cover for a gang, and that if Plaintiff tried to organize such a group he would be "hooked up." Plaintiff spoke to other Latino prisoners, some of whom were affiliated with gangs that had few to zero members at URF, and tried to get them to leave the gangs and do something positive.

Defendant Brown approached Plaintiff on many occasions between December 2004 and January 31, 2005. During these encounters, Defendant Brown stated that he was watching Plaintiff and referred to H.A.S.T.A. as a gang. Defendant Brown told Plaintiff that he would get him "off this yard no matter what it takes." Defendant Brown further stated that "they don't want no more prisoner organizations, that's why Melanics are gone." On January 31, 2005, prisoner Harbin assaulted prisoner Aguilar. Defendant Brown accused Plaintiff of somehow instigating the problem between prisoners Harbin and Aguilar. Plaintiff was transferred to LMF on January 31, 2005, as a result of this accusation. The Security Classification Committee (SCC) subsequently raised Plaintiff's risk level from III to V, and placed Plaintiff in a transition unit which was significantly more restrictive than level V general population.

Defendant Rutter approached Plaintiff in February of 2005 and asked him about his activities at URF.  Defendant Rutter told Plaintiff that if he provided detailed information about the assaults, he would have Plaintiff back to a level II or III "in no time."  Defendant Rutter warned Plaintiff that if he refused to provide such information, he would be a level V prisoner indefinitely. Plaintiff claims that Defendant Rutter approached him for such information several times between February and April of 2005.  On April 6, 2005, Defendant Rutter issued a Notice of Intent (NOI) on Plaintiff, which ordered him to speak only English on the phone.  Plaintiff states that this order was not given to any other Spanish speaking prisoners.

On April 11, 2005, Defendant Carberry upheld the NOI following a hearing, despite failing to articulate any penological justification for his finding.  Defendant Carberry merely noted that it appeared that Plaintiff was attempting to hide his conversation.  Defendant Carberry told Plaintiff that it was not "up to" him and that "they" did not want Plaintiff speaking Spanish.  Plaintiff complains that there is no penological justification for the prohibition as all phone calls are recorded and use of Spanish on the phone is not prohibited by policy.

Plaintiff claims that he held a prison job from March 11, 2005, until April 30, 2005. On April 30, 2005, Plaintiff was accused of creating a security concern by walking in the direction of the perimeter fence.  Defendant Rutter termed Plaintiff's action as an attempt to escape.  On April 30, 2005, Defendant Rutter wrote a second NOI on Plaintiff which resulted in him being reclassified to administrative segregation.  Defendant Rutter recited Defendant Brown's unsubstantiated allegations and stated that over time Plaintiff had gained control over the Latino gangs at URF.  Defendant Rutter further stated that Plaintiff used his control to sanction assaults on other prisoners, extort other prisoners for protection, and to obtain weapons and drugs. Defendant Rutter claimed that after Plaintiff arrived at LMF, he began building ties with several Latino

- 3 -

prisoners and formed a group known as the "Latino Community," which made decisions for the entire Latino population.  Plaintiff claims that the reports written by Defendants Brown and Rutter were both misleading and based entirely on hearsay from prisoners not proven to be credible.  In addition, Plaintiff states that Defendants Rutter and Brown omitted evidence from prisoners who gave information not helpful to their claims.

Plaintiff alleges that on May 3, 2005, Defendant Hobson wrote that Plaintiff had requested "no witnesses," which was untrue.  Defendant Hobson failed to interview Defendant Rutter or Defendant Brown, nor did he interview any of the confidential informants.  Prior to Plaintiff's hearing, Defendant Hobson told him that the outcome was "pretty much academic" and that Plaintiff was "gonna be in the hole awhile." Defendant Maki was assigned as the hearing officer on the NOI.  During an adjournment of the hearing, Defendant Rutter was overheard telling Defendant Maki that Plaintiff was a "real problem." Defendant Maki responded by stating, "You've got nothing here, you've gotta give me something I can work with." At the conclusion of the hearing, Defendant Maki found that the URF information was credible and that Plaintiff's control of the Latino gangs at URF resulted in a serious assault against a close associate.  Defendant Maki refused to contact prisoner Rodriguez regarding a letter which was used as evidence against Plaintiff. Defendant Maki failed to state on the record which confidential informants she found credible or what evidence was relied on.  Defendant Maki denied Plaintiff's request for prisoner Vega and prison staff as witnesses.  On May 13, 2005, the SCC classified Plaintiff to administrative segregation based on Defendant Maki's findings.

Plaintiff's due process claims were dismissed for failure to state a claim.  Because Plaintiff did not file any grievances against Defendant Caruso,  Plaintiff's equal protection, retaliation, conspiracy, and state law claims were dismissed for failure to exhaust under the total

exhaustion rule of *Jones Bey v. Johnson, et al.*, 407 F.3d 801 (6th Cir. 2005). Subsequently, Plaintiff's motion to alter judgment and dismiss Defendant Caruso was granted in part (docket #11) and the case was re-opened, as the total-exhaustion grounds for dismissal of the action no longer applied.

Plaintiff claims that Defendant Rutter violated his Fourteenth Amendment equal protection rights in issuing the NOI against him, and that Defendant Carberry did the same in upholding the NOI at the hearing. Plaintiff claims that the actions of Defendants Brown and Rutter were taken in retaliation for his attempts to start a legal organization for the benefit of Latinos. He contends that this retaliation violated his rights under the First Amendment. Plaintiff claims that Defendants Maki, Rutter, and Hobson conspired to place him in administrative segregation. Finally Plaintiff asserts state law claims of libel, slander, defamation of character, false light, invasion of privacy, gross negligence, and abuse of process against Defendants Brown and Rutter. Plaintiff seeks injunctive relief, including release from segregation and compensatory and punitive damages.

Presently before the Court is Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As a preliminary issue, Plaintiff has filed a motion to strike Defendants' Motion for Summary Judgment or, in the alternative, to supplement his response to the same. Plaintiff cites *Jones v. Bock*, 127 S. Ct. 910 (2007), which was decided after Defendants filed their Motion for Summary Judgment . Plaintiff argues that failure to exhaust is now an affirmative defense, and that Defendants in their Motion to Dismiss For Failure to Establish Exhaustion of Administrative Remedies (Docket #30) only addressed the issue in the context of the now-defunct total exhaustion rule. Plaintiff argues that they are now barred from raising the defense by application of Fed. R. Civ. P 12(g), which reads in relevant part:

> If a party makes a motion under this rule but omits therefrom any
> defense or objection then available to the party which this rule
> permits to be raised by motion, the party shall not thereafter make a
> motion based on the defense or objection so omitted[.]

First, Defendants' Motion to Dismiss did not omit the defense of failure to exhaust, it merely addressed a pleading requirement not satisfied by Plaintiff.  Second, Rule 12(g) is addressed only to defenses available to the a party at the time they made any motion under Rule 12. When Defendants filed their Motion to Dismiss, *Jones* had not yet been decided.  It follows that the affirmative defense of failure to exhaust was not then available to Defendants for the simple reason that it was instead a pleading requirement.  Therefore, it is recommended that Plaintiff's Motion to Strike (Docket #80) be denied, but that the exhaustion issue be analyzed under the framework of *Jones v. Bock*.

**Exhaustion of Administrative Remedies**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  See *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  See *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In *Jones v. Bock*, 127 S. Ct. 910, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints."  Moreover, the burden is on Defendants to show that Plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  Exhaustion is no longer a pleading

requirement. The Supreme Court also rejected total exhaustion, holding that when a defendant establishes lack of exhaustion as an affirmative defense, only the unexhausted claim may be dismissed.  Accordingly, it is inappropriate to dismiss a case for failure to exhaust on a Rule 12(b) motion unless the plaintiff states in his complaint that he failed to exhaust his grievances against a defendant on a particular claim. The fact that Plaintiff attaches grievances to his complaint that may not show exhaustion of every issue presented is of no consequence, because Plaintiff has no duty to show exhaustion.  The burden lies solely with a defendant to show that Plaintiff failed to exhaust grievance remedies.  It is each defendant's responsibility to support a motion for summary judgment with specific reasons why a issue should be dismissed for failure to exhaust.  A general statement that Plaintiff failed to exhaust his grievance remedies will not be sufficient.  Moreover, where Defendants' claim that a grievance was not properly filed, it is also Defendants' burden to establish that Plaintiff's grievances were procedurally defective.

Defendants first assert that Plaintiff did not properly appeal Defendant Maki's decision in his misconduct hearing and, therefore, Plaintiff has failed to exhaust his administrative remedies regarding the hearing. They argue that they are thus entitled to summary judgment on Plaintiff's claims pertaining to the hearing.  Plaintiff did file grievances regarding the alleged conspiracy between Defendants Maki, Rutter, and Hobson to have him placed in administrative segregation. However, decisions made in hearings by hearings officers are non-grievable, and can only be addressed by an application for a rehearing.

Plaintiff states in his response to Defendants' Motion for Summary Judgment that he timely appealed the outcome of the hearing.  Plaintiff has submitted a copy of his request for a rehearing, filed on May 30, 2005, and the response denying his request from Hearings Administrator Richard Stapleton.  Plaintiff has met his burden to establish that he in fact requested a rehearing, and

thus has properly exhausted his administrative remedies as to any claims directly pertaining to the outcome of this hearing.

Defendants further argue that Plaintiff's grievances concerning his retaliation and conspiracy claims were both untimely and procedurally defective and, therefore, Plaintiff has failed to completely exhaust his administrative remedies, requiring dismissal of these claims. Specifically, all three of Plaintiff's grievances were filed after the deadline of seven days from the date of the grievable incident or its discovery by the grievant. Additionally, grievances LMF-05-06-1821-28e and LMF-05-06-1785-28e were rejected because they were directly related to the hearings process, and a prisoner should use the hearing appeals process to question a hearing decision made against him. In the opinion of the undersigned, Defendants have met their burden to provide specific reasons why Plaintiff's grievances were defective.

Plaintiff contends that an MDOC Policy Directive, like the one mandating that he file his grievance within seven days of the incident, does not have the force of law, and cannot control a prisoner's access to the courts. Plaintiff argues that while MCL 600.5503 requires exhaustion of administrative remedies, it sets no time limit in which to do so. Plaintiff maintains that, although his grievances were denied for being untimely, he has nonetheless properly exhausted his administrative remedies as required by the statute. This argument is directly rejected by *Woodford v. Ngo*, 126 S. Ct. 2378, 2393 (2006), in which the Supreme Court held that a prisoner fails to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance. The Court expressly noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." The Court expressly rejected the argument that "[b]ecause

respondent has raised constitutional claims, . . . the Court may not, as a matter of federal common law, apply an extrastatutory waiver requirement against him." *Id*. at 2386, n. 2.  What constitutes proper exhaustion as mandated by the PLRA is determined by the grievance procedure set out by the MDOC.

In the alternative, Plaintiff argues that the MDOC's seven-day time limit on the filing of grievances unduly impinges on his right of access to the courts, and is thus unconstitutional. Plaintiff's claim is one that challenges the grievance process itself. A prisoner has no constitutional right to any effective grievance procedures or access to any such procedure voluntarily established by the state.  See *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 510 U.S. 1022 (1995) (collecting cases); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Lutchey v. Wiley*, No. 98-3760, 1999 WL 645951, at **1 (6th Cir. Aug 13, 1999); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998); *Saylor v. O'Dea*, No. 96-6685, 1997 WL 693065, at *2 (6th Cir. Oct. 31, 1997); *Wilcox v. Johnson*, No. 95-1754, 1996 WL 253868, at *1 (6th Cir. May 13, 1996). Therefore, Plaintiff's challenge is without merit.

Plaintiff asks the court to exercise its powers in equity to excuse the untimeliness of his grievances.  Plaintiff contends that he qualifies for equitable tolling under *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), because (1) he had no actual or constructive notice of any enforceable deadline; (2) he reasonably relied on *Thomas v. Woolum*, 337 F.3d 720 (2003);[1] (3) he acted with all reasonable speed considering his placement in segregation and the difficulty in accessing his legal

---

[1] In *Thomas* a divided panel of the Sixth Circuit held that timeliness of a grievance was irrelevant for purposes of the PLRA's exhaustion requirement. *Thomas* was overruled by *Woodford v. Ngo*,126 S. Ct. 2378, (2006).

assistance partner and witnesses at other facilities; and (4) the complexity of the issues presented in his grievance justified the delay.

The doctrine of equitable tolling is addressed to the statute of limitations for filing an action, not to the internal grievance procedures of the MDOC. Furthermore, Plaintiff had constructive notice of the applicable time limits for the filing of grievances, as these are published and available to him. Whatever difficulties Plaintiff encountered in procuring legal assistance and witness testimony from prisoners at other facilities would not have prevented him from filing his grievances within the time limit. Therefore, it is recommended that the court refuse to disregard the untimeliness of Plaintiff's grievances.

Finally, Plaintiff claims that the grievance he filed at URF (URF-1506-1075-17i) properly exhausts his claims. While this grievance was also rejected as untimely, Plaintiff alleges that the MDOC did not regularly follow the seven-day limitation on the filing of grievances, and that the denial of the grievance did not assert any adequate procedural default rule. Without reaching the merits of this claim, the undersigned recommends that it be dismissed as entirely unsupported by evidence that the seven-day limitation was not regularly enforced.

Plaintiff's conspiracy, retaliation, and equal protection claims can be dismissed for failure to exhaust administrative remedies. A review of those claims also supports summary judgment on the merits.

**Defendant Maki's Immunity With Regard to the Misconduct Hearing.**

Defendant Maki asserts that she was acting in her capacity as a hearings officer, did not exceed the scope of her authority, and is thus entitled to immunity. Plaintiff claims that Defendant Maki improperly considered hearsay evidence at his hearing and improperly coached Defendant Rutter before the hearing.

- 11 -

In *Shelly v. Johnson*, 849 F.2d 228 (6th Cir. 1988), the court affirmed a decision of Douglas W. Hillman, then Chief District Judge of this court, holding that Hearings Officer Jerry Sherman, when acting under MCLA § 791.251 -791.255, was entitled to absolute judicial immunity in relation to actions taken in his capacity as hearings officer. Because Plaintiff has made no allegations that Defendant Maki acted outside the scope of her authority as a hearings officer, and for the reasons stated in *Shelly*, I recommend summary judgment be entered on behalf of Defendant Maki.

**Evidentiary Support for Plaintiff's Conspiracy Claim**.

Defendants argue that Plaintiff's allegations of conspiracy are entirely conclusory, and that the record contains no evidence showing that Defendants Maki, Rutter and Hobson conspired together to violate Plaintiff's constitutional rights. Defendants also argue that being placed in segregation is not a constitutionally cognizable deprivation.

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d 831; *Hooks*, 771 F.2d 935. In this case, Plaintiff failed to allege any facts indicating that Defendants shared a single plan. He has alleged, at most, that each defendant took an action against him, and an inference of conspiracy cannot reasonably be drawn from this alone. Furthermore, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)); *Rimmer-Bey v. Brown*, 62

F.3d 789, 790-91 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997).  Therefore, a conspiracy to place Plaintiff in segregation would not be cognizable as a conspiracy to violate Plaintiff's constitutional or other federal rights.  Therefore, it is recommended that summary judgment be granted on Plaintiff's claim of conspiracy.

**Plaintiff's First Amendment Retaliation Claims.**

Defendants Brown and Rutter argue that they are entitled to summary judgment on Plaintiff's retaliation claims against them because Plaintiff has produced no evidence to show that he engaged in constitutionally protected conduct.  While Plaintiff has submitted affidavits establishing the existence of a question of fact as to whether he in fact attempted to start L.A.S.S.O. and H.A.S.T.A. chapters, Defendants claim that starting a prison organization is not protected conduct for purposes of First Amendment retaliation claims.  Defendants also argue that, because neither Defendant had the power to stop Plaintiff from starting one of these organizations should the Deputy Director approve it, their actions would not have deterred a person of ordinary firmness from continuing to attempt to start these organizations.  Finally, Defendants assert that Plaintiff has produced no evidence establishing a causal connection between protected conduct and the allegedly retaliatory acts, and that they would have written the reports regardless of Plaintiff's attempts to start prison organizations.

Plaintiff contends that he attempted to start prison organizations in the exercise of his right to peaceably assemble, and that this was protected conduct. He further argues that, while Defendants Brown and Rutter were not in a position to approve or disapprove his request to start prison organizations, their actions against him as detailed above would be sufficient to deter a person of ordinary firmness from attempting to do so.  Finally, Plaintiff contends that it was only after his refusal to cooperate with Defendant Rutter's requests for information that the Defendants took

- 13 -

adverse action against him.  Plaintiff claims that the fact that Defendant Rutter took no actions against him when he arrived, or for fifty days thereafter, allows an inference that Defendant Rutter wrote his report in retaliation for Plaintiff's attempts to start prison organizations during that time frame.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  See *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The starting of a prison organization is not necessarily protected conduct for purposes of First Amendment analysis.  "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Price v. Johnston*, 334 U.S. 266, 285 (1948); see also *Pell v. Procunier*, 417 U. S. 817, 822 (1974); *Wolff v. McDonnell*, 418 U. S. 539, 555 (1974).  Furthermore, "Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls.  The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates."  *Jones v.  North*

- 14 -

*Carolina Prisoners' Labor Union* 433 U.S. 132 (1977).  Therefore, it is recommended that the creation of prisoner organizations not be held as protected conduct for purposes of a retaliation analysis.

Additionally, Plaintiff has not produced any evidence to indicate that Defendants Brown and Rutter were motivated to write their reports on Plaintiff by his attempts to start prison organizations.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  See *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial.  *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. April 10, 1992); see also *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).  Plaintiff merely alleges the ultimate fact of retaliation in this action.  Therefore, it is recommended that summary judgment be granted on Plaintiff's First Amendment retaliation claim.

**Plaintiff's Equal Protection Claim.**

Defendants Rutter and Carberry assert that they had a rational basis for the NOI mandating that Plaintiff converse with his mother in English.  Defendants note that Plaintiff was at that time under close supervision due to Security Threat Group ties, and that Plaintiff was instructed to converse in English because supervising staff were unable to understand the dialect he was using. The NOI was upheld because it was believed that Plaintiff was trying to hide the content of his conversation.  Plaintiff argues that Defendants Rutter and Carberry did not have a legitimate concern

- 15 -

that Plaintiff was a security threat when he made recorded calls to his mother.  Plaintiff maintains that these calls were recorded and that Defendants had the ability to translate them.  Plaintiff asserts that there was no rational basis for the NOI, which was instead motivated by racial prejudice.

Because Plaintiff asserts that he was treated differently than others similarly situated, he sets out a cause of action on behalf of "a class of one." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Therefore, only rational basis scrutiny is required.  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  It is clear from the record that Defendants Carberry and Rutter had a reasonable concern that Plaintiff represented a security threat.  While there may have been alternative means of addressing this threat than having Plaintiff use English on the telephone, the security concerns were nonetheless a rational basis for issuing the NOI.  It is therefore recommended that Defendants be granted summary judgment on Plaintiff's equal protection claim.

**Qualified Immunity of Defendants Rutter, Brown, Carberry, and Hobson.**

Defendants claim that they are protected by qualified immunity because they did not violate any of Plaintiff's constitutional rights.  Plaintiff argues that Defendants violated his constitutional rights under the First and Fourteenth Amendments by retaliating against him for protected conduct and violating his right to equal protection, and that these rights were clearly established.  Because the undersigned finds that no constitutional violation occurred, Defendants are also entitled to qualified immunity on Plaintiff's claims.

**State Law Claims**

To the extent that Plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).

**Conclusion.**

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion For Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Dismissal and/or Summary Judgment (Docket #49) be

granted and that this case be dismissed in its entirety.  It is further recommended that Plaintiff's
Motion to Strike (Docket #80) be denied.

Further, if the court adopts this recommendation the court should decide that an
appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See
McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court
grants defendants' motion for summary judgment, the court can discern no good-faith basis for an
appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455
appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is
barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is
barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be
served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of
this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.
LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.
*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140
(1985).


                                         /s/ Timothy P. Greeley
                                         TIMOTHY P. GREELEY
                                         UNITED STATES MAGISTRATE JUDGE


Dated:  August 22, 2007


- 18 -